Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-08-00430-CR

Jason David **YEPEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 379th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-2202B
Honorable Bert Richardson, Judge Presiding

Opinion by:    Sandee Bryan Marion, Justice

Sitting:      Karen Angelini, Justice
              Sandee Bryan Marion, Justice
              Phylis J. Speedlin, Justice

Delivered and Filed:   June 24, 2009

AFFIRMED

A jury found defendant, Jason David Yepez, guilty of aggravated sexual assault of a child

and the trial court assessed punishment at life in prison. In ten issues on appeal, defendant complains

about testimony regarding his firing a gun at a vehicle. We affirm.

**BACKGROUND**

The complainant, Y.G., was fifteen years old at the time of the assault. She testified that, at around midnight on December 10, 2005, she was at home watching television with her sister and brother when she heard a noise. She got her purse to go outside because she thought her boyfriend was outside and she wanted to smoke marijuana with him. However, when Y.G. opened the door she saw a man pointing a gun. Another man grabbed her and forced her into a jeep. Y.G. testified she was frightened and did not try to escape from the car, even though it made several stops, because the men had a gun and she was afraid they would shoot her. At some point while driving along the highway, the man later identified as defendant said "you don't think I'm down bitch," and he fired the gun out the window, hitting a small green truck. Later in the evening, Y.G. was sexually assaulted by defendant and another man in the car.

Also, on that same evening, Janette Knifer and her husband were driving in their green Nissan truck, when they heard the sound of shattering glass and Janette felt a burning sensation on her neck. When Janette's husband realized she had been shot, they called 911 and drove immediately to her mother's house. When paramedics later examined Janette, a bullet fell from her bra. Janette was five months pregnant.

A police officer testified he interviewed Janette and her husband; neither of whom could identify the shooter. Another police officer, Matthew Hollenbeck, also interviewed Janette on the evening of the shooting. By coincidence, on December 11, Hollenbeck also interviewed Y.G. While listening to Y.G., Hollenbeck realized her story about defendant firing the gun may be related to the

Knifers' story. Ballistics tests later revealed the bullet that grazed Janette's neck came from the same gun fired by defendant.

## DISCUSSION

In his first five issues, defendant asserts the testimony of Janette and the police officers regarding the shooting of Janette was not relevant to the aggravated sexual assault charges.

Evidence is "relevant" when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Defendant contends Janette's and the police officers' testimony about the shooting was not relevant to the aggravated assault charge because Y.G. had already testified he used and exhibited a deadly weapon. However, although Y.G. testified she did not try to run away because she was afraid the men would shoot her, defendant's theory at trial was that Y.G. was never threatened and was in the car voluntarily because she wanted to do drugs and "party." Therefore, we conclude the testimony regarding the firing of the gun was relevant to two facts in issue: whether defendant, in fact, used or exhibited a deadly weapon and whether Y.G. was in the car against her will.

In his final five issues, defendant asserts the probative value of the testimony of the various witnesses regarding the shooting was outweighed by the danger of unfair prejudice. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403.

"Probative value" refers to the "inherent probative force of an item of evidence – that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation – coupled with the proponent's need for that item of evidence." *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). When conducting the Rule 403 balancing test, the trial court must determine whether the probative value of the evidence is substantially outweighed by one of the following countervailing considerations listed in the rule. *Casey v. State,* 215 S.W.3d 870, 879 (Tex. Crim. App. 2007). "Unfair prejudice" refers to a tendency to suggest that a decision will be made on an improper basis, commonly, though not necessarily, an emotional one. *Gigliobianco,* 210 S.W.3d at 641. "Confusion of the issues," refers to a tendency to confuse or distract the jury from the main issues in the case. *Id.* "Evidence that consumes an inordinate amount of time to present or answer, for example, might tend to confuse or distract the jury from the main issues." *Casey,* 215 S.W.3d at 880. "Misleading the jury," refers to a tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds. *Gigliobianco,* 210 S.W.3d at 641. "Undue delay" and "needless presentation of cumulative evidence" concern the "efficiency of the trial proceeding rather than the threat of an inaccurate decision." *Id.*

A deadly weapon finding is a necessary element of aggravated sexual assault. *See* Tex. Penal Code Ann. § 22.021 (Vernon Supp. 2008). Therefore, the inherent probative force of the testimony regarding defendant's shooting the gun was its tendency to show that Y.G. did not willingly get into or remain in the car. *See Casey*, 215 S.W.3d at 882. "The probative force of the evidence is coupled with the State's need for the evidence, and they are placed on one side of the scale." *Id.* Although Janette's and the police officers' testimony was prejudicial to defendant, the

testimony was not unfairly prejudicial. "Evidence is *unfairly* prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justifies its admission into evidence." *Id.* at 883 (emphasis added). "The prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant." *Id.* Janette's and the police officers' testimony tended to corroborate Y.G.'s testimony that defendant used or exhibited a deadly weapon. "Like all corroborating evidence, because it is consistent with [Y.G.'s] story, it has a tendency to make her testimony more plausible." *Id.* at 883-84. On appeal, defendant concedes Janette's and the police officers' testimony did not consume an inordinate amount of time. We also conclude the testimony did not have any tendency to confuse or mislead the jury.

Based on our review of the record, we conclude the trial court did not abuse its discretion in deciding that Janette's and the police officers' testimony was relevant and that the probative value of the testimony was not substantially outweighed by the risk of unfair prejudice.

## CONCLUSION

We overrule defendant's issues on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice

DO NOT PUBLISH